### THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| OBINA ONYIAH, | : |
|                Plaintiff, | : |
|  | :  Civil Action |
| v. | :  No. 22-1556 |
|  | : |
| CITY OF PHILADELPHIA, et al., | : |
|                Defendants. | : |

### ORDER

AND NOW, this _____ day of _____, 2022, upon consideration of Defendants' Partial Motion to Dismiss the Amended Complaint, it is HEREBY ORDERED that the Partial Motion to Dismiss is GRANTED and Plaintiff's claims are disposed of, in part, as follows:

- Plaintiff's claims against former Commissioner Charles Ramsey are DISMISSED for failure to state a claim;

- Count I, to the extent Plaintiff seeks to pursue a claim under the Pennsylvania Constitution, is DISMISSED because there is no such cause of action; the remainder of Count I proceeds to discovery;

- Count II, to the extent Plaintiff pursues malicious prosecution claim under the Fourteenth Amendment, is DISMISSED because that right is not clearly established; the remainder of Count II proceeds to discovery;

- Count IV, failure to intervene, is also DISMISSED because no such constitutional right is clearly established; the remainder of Count IV proceeds to discovery; and

- Count VII, municipal liability, is DISMISSED for failure to adequately state a claim for which relief can be granted; in the alternative, Count V is DISMISSED for failure to state

a claim where the alleged constitutional violation was not of a clearly established constitutional right.

BY THE COURT:

_____
JOHN R. PADOVA, J.

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **OBINA ONYIAH,** : | |
|         **Plaintiff,** : | |
| : | Civil Action |
|      **v.** : | No. 22-1556 |
| : | |
| **CITY OF PHILADELPHIA, et al.,** : | |
|         **Defendants.** : | |

### DEFENDANTS' PARTIAL MOTION TO DISMISS

Defendant City of Philadelphia ("City") and Defendants former Police Commissioner Charles Ramsey, Detective Ohmarr Jenkins, and Detective Thorston Lucke (collectively, "individual Defendants") file this Partial Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(6). In support of this Motion, Defendants incorporate the attached memorandum of law. Defendants respectfully request that this Court dismiss, in whole or in part, Counts I, II, IV, and VII of the Amended Complaint as to some or all of the Moving Defendants.

Date: November 18, 2022                            Respectfully submitted,

                                                               /s/ *Danielle Walsh*
                                                               Danielle E. Walsh
                                                               Divisional Deputy City Solicitor
                                                               Pa. Attorney ID No. 312438
                                                               City of Philadelphia Law Department
                                                               1515 Arch Street, 14th Floor
                                                               Philadelphia, PA 19102
                                                               215-686-0464 (phone) / 215-683-5397 (fax)
                                                               danielle.walsh@phila.gov

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **OBINA ONYIAH,** : | |
| **Plaintiff,** : | |
| : | Civil Action |
| v. : | No. 22-1556 |
| : | |
| **CITY OF PHILADELPHIA, et al.,** : | |
| **Defendants.** : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS**

**I.      INTRODUCTION**

Plaintiff Obina Onyiah has filed suit, contending that he served approximately eleven years in prison for a murder that he did not commit, and alleging that the reason for his conviction was unconstitutional actions of officers employed by the Philadelphia Police Department. Plaintiff seeks to hold the named and unnamed individual defendants liable under a myriad of legal theories, including deprivation of constitutional due process by coercing statements pursuant to the United States and Pennsylvania constitutions (Count I); unconstitutional malicious prosecution pursuant to Fourth and Fourteenth Amendments of the United States constitution (Count II); unconstitutional failure to make mandatory disclosures under *Brady* and *Giglio* (Count III); "bystander liability"/failure to intervene (Count IV); conspiracy to violate civil rights (Count V); and supervisory liability (Count VI). Plaintiff also brings a *Monell* claim against the City of Philadelphia (Count VII).

Defendants move to dismiss several of Plaintiff's claims, some of which are unsupported by the factual allegations of the operative pleadings and others of which are unsupported by the law.

## II.      FACTUAL AND PROCEDURAL BACKGROUND[1]

On October 21, 2010, two men attempted to commit a robbery at a jewelry store in Philadelphia. Am. Compl. ¶ 18. During that attempted robbery, the store owner, William Glatz, shot and killed Kevin Turner (one of the robbers) and was himself fatally shot. *Id.* ¶ 19. The other involved individual ran away. *Id.* ¶ 20.

Detectives interviewed four people, all of whom described the individual who fled the store as significantly younger, slimmer, and shorter than the person who was shot at the scene. Am. Compl. ¶¶ 21-28. Detective Lucke extracted the video surveillance and captured stills from it showing the individual who fled. *Id.* ¶¶ 30-32. As a result of a tip received two days after the murder, Defendants explored a man named Donte Waters as a possible suspect. *Id.* ¶¶ 33-40. On October 25, an individual incarcerated at the Federal Detention Center advised authorities, through his girlfriend, that he recognized the individual depicted in the still frame as Plaintiff Obina Onyiah. *Id.* ¶¶ 41-45. Police documentation indicates that Plaintiff's sister identified him in the still footage on November 8, 2010 – she denies she ever made that identification. *Id.* ¶ 46-52.

Plaintiff was taken into custody later that same day, around 3:20 p.m. on November 8, 2010. Am. Compl. ¶ 64. He alleges that former Detective Pitts physically assaulted him in order to get him to confess to the crime, and that Detectives Lucke and Jenkins watched this coercion without interfering to stop it. *Id.* ¶¶ 71-84. Plaintiff gave an inculpatory statement by ten hours later, and was arrested on November 10, 2010. *Id.* ¶¶ 89-93. Plaintiff's criminal defense counsel failed to call two of the three individuals who were held as witnesses in the Homicide Unit during

---

[1] The following recitation is taken from Plaintiff's Amended Complaint and accepted as true for the limited purposes of this motion to dismiss for failure to state a claim. *Cudjoe v. Dep't of Veterans' Affairs*, 426 F.3d 241, 244 (3d Cir. 2005); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Defendants do not concede that all the allegations in the Complaint are supported by a factual basis, following a reasonable investigation.

Plaintiff's interrogation, and also failed to call Plaintiff as a witness, thereby depriving Plaintiff of the opportunity more fully present his suppression argument that his statement was coerced. *Id.* ¶¶ 97-105. Plaintiff was convicted of second-degree murder on May 31, 2013, and, after years of post-conviction litigation, had his conviction vacated and his charges dismissed. *See* Am. Compl. ¶¶ 107-117.

By his seven-count amended complaint, Plaintiff seeks to hold three current or former Philadelphia Police Department detectives liable for:

- Deprivation of constitutional due process by coercing statements pursuant to the United States and Pennsylvania constitutions (Count I);
- Unconstitutional malicious prosecution pursuant to the Fourth and Fourteenth Amendments of the United States constitution (Count II);
- Unconstitutional failure to make mandatory disclosures under *Brady* and *Giglio* (Count III);
- "Bystander liability"/failure to intervene (Count IV);
- Conspiracy to violate civil rights (Count V); and
- Supervisory liability (Count VI).

*See generally* Am. Compl. ¶¶ 128-69. Plaintiff also alleges a municipal liability claim against the City of Philadelphia, in which he appears to pursue under every theory of liability available (Count VII). *Id.* ¶¶ 170-90. Defendants Commissioner Ramsey, Detective Jenkins, Detective Lucke, and the City of Philadelphia now move for partial dismissal.

## III. ARGUMENT

A plaintiff cannot survive a motion to dismiss under Rule 12(b)(6) without stating a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must

plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, while a court should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's "bald assertions" or "legal conclusions." *Anspach v. City of Philadelphia*, 503 F.3d 256, 260 (3d Cir. 2007). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (internal quotation marks omitted).

Here, Plaintiff fails to allege sufficient facts to establish all of his claims against either Commissioner Ramsey or the City of Philadelphia, warranting dismissal of those claims and parties. In the alternative, several of Plaintiff's claims are unsupported by the law, in that they are not actionable or implicate rights that were not clearly established at the time of the alleged conduct giving rise to his claims. That several claims are subject to qualified immunity, in turn, means that Plaintiff cannot establish the elements of his claim that the City might be held responsible for those alleged harms. These pleading defects warrant dismissal, in whole as to some Defendants or in part as to all, of Plaintiff's Amended Complaint.

**A. Plaintiff Fails to Plead Facts Establishing Commissioner Ramsey's Personal Involvement in Any of Plaintiff's Alleged Harms, and the Official Capacity Claim Against Him is Duplicative of that Brought Against the City, Warranting Dismissal**

A "defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (explaining that "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Stated another way, liability for a civil rights claim cannot be imputed vicariously. *Evancho v. Fisher*, 425 F.3d 347, 353 (3d Cir. 2005).

4

Instead, an individual defendant must have personal involvement in the alleged constitutional violation. *Id.*

Here, Plaintiff names former Philadelphia Police Commissioner Charles Ramsey as a defendant "in his official capacity." Am. Compl. ¶ 7. However, throughout the operative pleading Plaintiff contends that Commissioner Ramsey acted or failed to act in ways that expose the former Commissioner to liability. *See, e.g.*, *id.* ¶ 171. In an abundance of caution, should such allegations be construed as suggesting an individual capacity claim against Commissioner Ramsey, any such claim should be dismissed because Plaintiff has not alleged specific actions by Commissioner Ramsey that caused Plaintiff's alleged constitutional harm. Any such claim should be dismissed.

In turn, the official capacity claim against Commissioner Ramsey should also be dismissed. An official capacity claim is equivalent to, and thus duplicative of, a claim against the City. Suits against state actors in their official capacity, in contrast to their personal capacity, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Courts in the Third Circuit have routinely dismissed claims brought against a state actor in his or her official capacity where, like here, a claim has also been brought against the municipal entity that employs them. *See e.g., Fitzgerald v. Martin*, Civ. A. No. 16-3377, 2017 WL 3310676, at *6 (E.D. Pa. Aug. 3, 2017) (dismissing claim against district attorney's office employees in their official capacity as duplicative of claims against the county); *Strickland v. Mahoning Township*, 647 F. Supp. 2d 422, 639 n.27 (E.D. Pa. 2018) (dismissing claim against individual City Commissioners in their official capacity as duplicative of the claims against the City Commissioners' Office). For this reason, the claim against Commissioner Ramsey should be dismissed with prejudice.

### B. Plaintiff is Not Entitled to the Relief Sought for the Alleged Pennsylvania Constitutional Violation

In Count I, Plaintiff claims he was deprived of his due process rights and subjected to violations of the Pennsylvania Constitution. Am. Compl. ¶ 119. For this alleged harm, he seeks compensatory and punitive damages. *See id.* ¶ 132 ("Wherefore" clause). Under controlling law, he is not entitled to any relief and this section of Count I should be dismissed.

Pennsylvania's Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa. Cons. Stat. Ann. § 8541, protects the City of Philadelphia from certain suits. Though the statute contains no exception for constitutional claims for monetary damages, the Third Circuit has held that "§ 8541 grants immunity to municipalities from claims for monetary damages arising under Pennsylvania's Constitution which do not fall within any of § 8542's enumerated exceptions." *Cornish v. City of Phila.*, 14–6920, 2015 WL 3387052 at *9 (E.D. Pa. May 26, 2015) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 600 (3d Cir. 1998)). Further, "[i]t is well settled that there is no private cause of action for damages under the Pennsylvania Constitution." *See Pocono Mountain Charter School v. Pocono Mountain School District*, 442 Fed. Appx. 681, 687 (3d Cir. 2011) (there is no authorization for an award of money damages for violations of the Pennsylvania Constitution). Accordingly, Plaintiff's claim for monetary damages as a result of an alleged violation of the Pennsylvania Constitution fails, and this portion of Count I should be dismissed.[2]

---

[2] While Plaintiff repleads Count I of his Amended Complaint to remove specific citation to the Pennsylvania Constitution as a source of his claim, *compare* Compl. ¶ 120 *with* Am. Compl. ¶ 130, he maintains that Defendants "deprived Plaintiff of his rights, privileges, and immunities under the United States Constitution and the Pennsylvania Constitution." Am. Compl. ¶ 129. In an abundance of caution, moving Defendants request dismissal of any portion of Count I predicated on the Pennsylvania Constitution.

### C. Several of Plaintiff's Claims Should Be Dismissed Because They Implicate Rights that Were Not Clearly Established at the Time, Entitling Defendants to Qualified Immunity

Qualified immunity shields public officials from liability unless it is "beyond debate" that the federal right they allegedly violated was "clearly established at the time of the challenged conduct." *See George v. Rehiel*, 738 F.3d 562, 579 (3d Cir. 2013). A right only qualifies as clearly established if its "contours…are sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations and quotations omitted) (emphasis added). Moreover, a right must be clearly established "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). District courts must give serious consideration to qualified immunity arguments made in motions to dismiss, because qualified immunity provides defendants "an entitlement not to…face the…burdens of litigation." *See Rehiel*, 738 F.3d at 571. "Accordingly, any claim of qualified immunity must be resolved at the earliest possible stage of the litigation." *Id.* (internal quotations omitted) (reversing district court's denial of a motion to dismiss based on qualified immunity after the district court stated that such immunity "may be clarified by discovery").

Several of the constitutional rights that Plaintiff seeks to vindicate are not clearly established. In the absence of a clearly established constitutional right, Defendants are entitled to qualified immunity. This analysis specifically applies to Plaintiff's claims that Detectives Jenkins and Lucke should be liable for malicious prosecution under the Fourteenth Amendment (Count II) and for "bystander liability" (Count IV).

7

1. <u>A Malicious Prosecution Claim Arising From the Fourteenth Amendment is Still Not Clearly Established</u>

In Count II, Plaintiff alleges, *inter alia*, a malicious prosecution claim pursuant to the Fourth and Fourteenth Amendments of the United States Constitution. Am. Compl. ¶¶ 133-43. However, the Court has recognized several times that whether a due process right against malicious prosecution under the Fourteenth Amendment exists remains an unsettled area of law. *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 380-82 (E.D. Pa. 2018). Consistent with the requirement that entitlement to qualified immunity is predicated on the clear notice that conduct will violate a particular constitutional right, the lack of a clear statement by the Third Circuit Court of Appeals regarding whether a malicious prosecution claim can be grounded in the Fourteenth Amendment means that Defendants are entitled to qualified immunity on this claim and this portion of Count II should be dismissed. *Id.*; *Outlaw v. City of Philadelphia*, No. 21-1290, 2021 WL 3471168, at *5 (E.D. Pa. Aug. 6, 2021) (dismissing the plaintiff's Fourteenth Amendment malicious prosecution claim on the concession that no such right was clearly established); *Lewis v. City of Philadelphia*, No. 19-2847, 2020 WL 1683451, at *5-8 (E.D Pa. Apr. 6, 2020) (collecting cases within the Circuit that conclude there is no clearly established procedural due process right against malicious prosecution).

2. <u>Bystander Liability, or A Failure to Intervene Claim, Is Not Clearly Established in Any Context But that of Excessive Force</u>

Although Plaintiff titles Count IV of his Amended Complaint "Bystander Liability", the detailed allegations forming the basis for this claim against Detectives Lucke and Jenkins are a failure to intervene in the itemized conduct. Am. Compl. ¶¶ 153-61. Specifically, Plaintiff, alleges that each knew that Plaintiff's constitutional rights were being violated, had a reasonable opportunity to intervene and prevent that violation, and failed to do so. Am. Compl. ¶ 157.

However, even as of 2017, this Court has recognized that failure to intervene claims have been brought "almost exclusively" in the context of excessive use of force. *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 672 (E.D. Pa. 2017), *aff'd*, 756 F. App'x 165 (3d Cir. 2018) (citing Third Circuit Model Jury Instruction (Civil) § 4.6.2 (2015) ("A defendant can in appropriate circumstances be held liable for failing to intervene to stop a beating.")).

In *Ekwunife*, this Court expressly declined to rely upon out-of-circuit caselaw from 2011 in which a failure to intervene claim was recognized in the context of unconstitutional interrogations. 245 F. Supp. 3d at 672. In doing so, the Court refused to expand the claim to cover allegations that a district attorney failed to correct information used to arrest and detain an innocent man. *Id.* Relying on *Ekwunife*, the Court in *Thorpe v. City of Philadelphia* similarly found that "it was not sufficiently clear that reasonable officers would have understood that failing to intervene when confronted with another's fabrication and withholding of evidence" would violate the plaintiff's constitutional rights. 2020 WL 5217396, at *11; *see also Outlaw*, 2021 WL 3471168 at *7.

As concluded by the *Ekwunife*, *Thorpe*, and *Outlaw* courts, a constitutional obligation to intervene in a non-force context was not clearly established at the time of the investigation and arrest of Plaintiff. Thus, qualified immunity applies to this claim against the moving Defendants, and it should be dismissed. And to the extent that Plaintiff contends the failure to intervene attaches to the force allegedly applied to his person during the 2010 interrogation he describes in his Complaint, any such claim is barred by the applicable statute of limitations. *See, e.g.*, *Farrow v. City of Philadelphia*, No. 20-5792, 2021 WL 2778554, at *1-2 (E.D. Pa. July 1, 2021).

### D. Plaintiff Fails to State a *Monell* Claim Under Any Theory of Municipal Liability in Count VII

This Court should dismiss Count VII because Plaintiff fails to assert sufficient facts to support each of the theories of municipal liability that are implicated by the averments of his Amended Complaint. *See* Am. Compl. ¶¶ 170-90. In the alternative, Plaintiff should be directed to clarify his theory of municipal liability so that the City is placed on notice of the actual theory of liability by which Plaintiff seeks recovery.

As a general matter, the liability of a municipality under Section 1983 is governed by *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978). Under *Monell,* a municipality cannot be subjected to liability solely because its agents or employees caused injury to another person. *Id.* Rather, a municipal entity may be liable under Section 1983 only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" deprives a citizen or constitutional rights. *Id.* at 694. An official policy may be established under three circumstances: (1) the municipal entity adopted and promulgated a policy, the implementation of which caused the constitutional deprivation; (2) the policymaker failed to act affirmatively even though the need to take some action is obvious and the inadequacy of the existing practice is likely to result in the violation of constitutional rights; or (3) absent a formal policy, an official with policymaking authority violated federal law, causing the constitutional deprivation. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003).

To succeed on a policy/practice/custom claim of municipal liability, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg, Pa*., 736 F.2d 903, 910 (3d Cir. 1984). As an initial matter, almost the entirety of Plaintiff's claims in Count VII

10

do not cite an official policy of the City that could be the basis of a *Monell* claim to support his policy or practice theory of *Monell*. Plaintiff only makes conclusory assertions that the City had a policy, practice, or custom of failing to train or supervise detectives (its own theory of liability, separate from that of an affirmative policy); and/or of acquiescing in unconstitutional methods of interrogating suspects; and/or of failing to train, discipline, or supervise detectives who did not turn over exculpatory evidence; and/or failing to investigate complaints made about homicide detectives. *Id.* ¶¶ 171-72, 179-81. Plaintiff also lists various instances in which he contends the Police Department has failed to provide adequate disciplinary and remedial actions. *Id.* ¶¶ 173-78, 183. Plaintiff then summarizes a series of allegations made in a newspaper series as putative support for his contentions about allegations of specific misconduct by the named defendants in this litigation, a substantial number of which post-date the incident at issue, are anonymized such that the validity of them is incapable of being tested, and/or involve conduct different than that specifically alleged in this litigation. *See id.* ¶ 184-87. None of these instances actually involve an express policy, or a condoned practice about which the City was on notice. *See id.* And none of them suggest an awareness by a policymaker of a pattern of behavior that the policymaker failed to address. Absent such averments, Plaintiff fails to establish his claim.

Plaintiff likewise fails to state a failure-to-train and/or supervise theory of *Monell*. "A municipality's failure to adequately train its officers and employees [also] gives rise to a cause of action under Section 1983 if the deficient training reflects a deliberate indifference to an individual's civil right and *is closely related to the ultimate injury*." *Tirado v. Montgomery Cnty.*, No. 12–00552, 2013 WL 1285487, at *7 (E.D. Pa. Mar. 29, 2013) (emphasis added) (internal citations omitted).

11

"Establishing municipal liability on a failure to train claim under § 1983 is difficult." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). Because a plaintiff will always be able to point to something more a municipality could have done, the standard of fault under this theory is high. *City of Canton v. Harris*, 489 U.S. 378, 391–92 (1989). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390–91. Accordingly, the municipality's deficiency must be specifically identified, closely related to the ultimate injury, and amount to deliberate indifference to its inhabitants' constitutional rights. *Id.* at 391–92. It is not sufficient that a plaintiff can point to "better or more training" that might have avoided the injury—such a claim can almost always be made. *Id.* at 391.

Similarly, to establish a claim for failure to supervise, a plaintiff must identify a "specific supervisory practice that the municipality failed to employ, 'contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents,' and circumstances under which the inaction of a supervisor could be found to have communicated a message of approval to a subordinate." *Quintana v. City of Philadelphia*, No. 10-6088, 2011 WL 2937426, at *5 (E.D. Pa. 2011) (citing *C.H. ex rel. Z.H. v. Olivia*, 226 F.3d 198, 202 (3d Cir. 2000)).

The allegations in the Amended Complaint neither specifically identify how officer training or supervision was inadequate, nor demonstrate a causal link between any alleged failures and the actual deprivation of rights that Plaintiff alleges now. While Plaintiff repeatedly alleges systemic failures and deficiencies in supervision and in training in the Philadelphia Police Department, Am. Compl. ¶¶ 170-183, 188-89, he fails to specifically identify a deficiency closely related to the alleged injury here. Plaintiff makes no mention of what training or supervision was provided by the Philadelphia Police Department regarding homicide investigations or

investigatory practices in general. Further, Plaintiff fails to explain what inadequate disciplinary and supervision systems were in place. Nor has Plaintiff identified the precise alleged deficiency and how the deficiency contributed to a violation of Plaintiff's constitutional rights. *See e.g., Colburn v. Upper Darby Twp*., 946 F.2d 1017, 1030 (3d Cir. 1991) (emphasizing that the plaintiff "must identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur"). Plaintiff's failure-to-train and/or supervise claim should thus be dismissed.

Finally, in a reaching effort to save his *Monell* claim, Plaintiff cites to an Overtime Management Memorandum (Am. Compl. Ex. A) as evidence of a facially unconstitutional policy implementing a "code of silence or 'blue code.'" Am. Compl. ¶ 121. Plaintiff baldly asserts that the memorandum "is a written policy that requires supervisors to remove from all police paperwork the names of all police witnesses who possess exculpatory information", *id*. at ¶ 119. The very language of the policy itself contradicts this claim. The memorandum simply requires commanders to review reports to ensure the correct police personnel are listed for the purpose of overtime management. Nowhere does the memorandum even make mention of exculpatory information. Further undercutting Plaintiff's claim is paragraph 2, which immediately follows:

> 2. All reports should clearly articulate the facts and circumstances of each case. Platoon commanders are responsible for ensuring that reports comprehensively capture the exact actions relevant to that case for each personnel member listed, including the supervisor.

Ex. A at page 3.[3] Plaintiff cannot credibly argue that on its face the memorandum dictates the suppression of exculpatory evidence when commanders are specifically being instructed to ensure

---

[3] Ex. A of the Amended Complaint is mis ordered.

13

that reports comprehensively capture exact actions of police personnel. Even assuming the memorandum *was* facially unconstitutional (it is not), Plaintiff fails to demonstrate how this "policy" has any causal nexus to his claimed injury of coerced and fabricated statements. Plaintiff's facially unconstitutional policy claim should also be dismissed.

In sum, Plaintiff's allegations in ¶¶ 170-89 are overbroad and insufficiently specific to state claims such that the City is appropriately on notice and able to defend against the theories of liability pursued by Plaintiff. If not dismissed, Plaintiff should at least be required to replead his theory of municipal liability in a manner that sufficiently puts the City on notice of the claim brought against it, to better inform the scope of discovery in litigation. Further, because the cited memorandum is not facially unconstitutional, and because Plaintiff has failed to show any link between his complained harm and the memorandum, that portion of Plaintiff's claim should be dismissed.

### E. Even if Count VII Is Not Dismissed in its Entirety, Plaintiff Cannot Establish Several of his Claims Against the City

Even if Plaintiff's claim in Count VII is not dismissed in its entirety, the City should not have to answer for any theories of liability that rely on a right not clearly established—that is, Plaintiff's municipality liability claim predicated on alleged Fourteenth Amendment malicious prosecution and failure to intervene should be dismissed for failure to state a claim.

Imposing liability on a municipal decisionmaker requires that the plaintiff "identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the police come into contact." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). The "stringent" deliberate indifference standard requires a showing that the "municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). As noted by the Circuit in *Forrest v. Parry*, "one whose claim is predicated on a

14

failure or inadequacy [to discipline/supervise/train] has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality." 930 F.3d 93, 106 (3d Cir. 2019). This deliberate indifference must be to a "wrong choice by an employee [that] will frequently cause deprivation of constitutional rights." *Id.* As explained by the Court in *Lewis v. City of Philadelphia*, "if the right at issue is not 'clearly established,' then any assertion of deliberate indifference is substantially undercut because, by definition, there are no 'clear constitutional guideposts' for the municipality to follow in developing policy." No. 19-2847, 2020 WL 1683451, at *12 (E.D. Pa. Apr. 6, 2020).

While the *Forrest* opinion explicates different, distinct tracks for liability, the Circuit's earlier opinion *Bielevicz v. Dubinon* suggests that the same analysis—the inability to state a claim for municipal liability arising out of a constitutional right that is not clearly established—applies equally in the policy or custom context. In *Bielevicz*, the Circuit explained that for a custom claim, a plaintiff must establish awareness of similar unlawful conduct or notice that procedures were constitutionally deficient. 915 F.2d 845, 851 (3d Cir. 1990). If a constitutional right is not clearly established, the same lack of constitutional guidepost that undermines a "failure or inadequacy" claim reliant on deliberate indifference also undermines a claim predicated on awareness or notice. In the absence of law establishing an issue of constitutional import for the overseen employees, a plaintiff cannot establish that a policymaker was aware of unlawful conduct or on notice that procedures were constitutionally deficient.

To be clear, the City does not assert that it is entitled to qualified immunity. But where qualified immunity applies because the law is not clearly established, Plaintiff cannot state claims for relief against the municipality because all such claims are predicated upon knowledge, notice, awareness, or indifference to constitutional harms. For these reasons, Plaintiff's municipal liability

15

claims predicated on constitutional rights that were not clearly established at the time of his arrest and prosecution should be dismissed.

### IV.  CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court dismiss claims against Commissioner Ramsey for Plaintiff's failure to show his personal involvement or, in the alternative, because it is redundant of the claim against the City. Defendants also request that Plaintiff's claim in Count I brought pursuant to the Pennsylvania Constitution be dismissed. Further, the Court should dismiss the Fourteenth Amendment malicious prosecution claim in Count II, and the "bystander liability"/failure to intervene claim in Count IV. Finally, the Court should either dismiss the municipal liability claim against the City of Philadelphia in Count VII, or direct Plaintiff to more clearly plead the theory of liability he seeks to pursue.

Date:  November 18, 2022              Respectfully submitted,

                                      /s/ *Danielle Walsh*
                                      Danielle E. Walsh
                                      Divisional Deputy City Solicitor
                                      Pa. Attorney ID No. 312438
                                      City of Philadelphia Law Department
                                      1515 Arch Street, 14th Floor
                                      Philadelphia, PA 19102
                                      215-686-0464 (phone) / 215-683-5397 (fax)
                                      danielle.walsh@phila.gov

# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OBINA ONYIAH,<br>    Plaintiff,<br><br>  v.<br><br>CITY OF PHILADELPHIA, et al.,<br>    Defendants. | Civil Action<br>No. 22-1556 |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, Defendants' Partial Motion to Dismiss, Memorandum of Law in support thereof, and Proposed Form of Order were filed via the Court's electronic filing system and are available for downloading.

Date: November 18, 2022

Respectfully submitted,

/s/ *Danielle Walsh*
Danielle E. Walsh
Divisional Deputy City Solicitor
Pa. Attorney ID No. 312438
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-686-0464 (phone) / 215-683-5397 (fax)
danielle.walsh@phila.gov