# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OBINA ONYIAH : | |
| : | CIVIL ACTION |
| vs. : | |
| : | No. 2:22-cv-01556 |
| CITY OF PHILADELPHIA, ET AL. : | |
| : | |

# ORDER

  **AND NOW**, this _____ day of _____, 2025, upon consideration of Defendants Clark, Riehl, Hayes, Glenn, Serrano, McDermott, Pirrone, and Spotwood's Partial Motion to Dismiss Plaintiff's Second Amended Complaint and all responses and replies thereto, it is hereby **ORDERED** that said Motion is **DENIED**.

BY THE COURT:

_____
John R. Padova, J.

**ABRAMSON & DENENBERG, P.C.**
BY: ALAN E. DENENBERG, ESQ.
IDENTIFICATION NUMBER: 54161
1315 WALNUT STREET, SUITE 500
PHILADELPHIA, PA 19107                **ATTORNEYS FOR PLAINTIFF**
(215) 546-1345

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OBINA ONYIAH** | : | |
|         **Plaintiff** | : | **CIVIL ACTION** |
| | : | |
| vs. | : | **NO. 2:22-cv-01556** |
| | : | |
| **CITY OF PHILADELPHIA, ET AL.** | : | |
|         **Defendants** | : | |

**RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff, Obina Onyiah, by and through his attorney, Alan E. Denenberg, Esq., hereby files this Response in Opposition to Defendants Clark, Riehl, Hayes, Glenn, Serrano, McDermott, Pirrone, and Spotwood's Partial Motion to Dismiss Plaintiff's Second Amended Complaint. In support of this Response in Opposition, Plaintiff incorporates by reference the following memorandum of law. Plaintiff requests that Defendants' Motion be denied in its entirety.

Respectfully submitted,

BY:   */s/ Alan E. Denenberg*
       ALAN E. DENENBERG, ESQ.
       ATTORNEY FOR PLAINTIFF

1

**ABRAMSON & DENENBERG, P.C.**
BY: ALAN E. DENENBERG, ESQ.
IDENTIFICATION NUMBER: 54161
1315 WALNUT STREET, SUITE 500
PHILADELPHIA, PA 19107                           **ATTORNEYS FOR PLAINTIFF**
(215) 546-1345

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **OBINA ONYIAH** | : | |
| Plaintiff | : | **CIVIL ACTION** |
| | : | |
| vs. | : | **NO. 2:22-cv-01556** |
| | : | |
| **CITY OF PHILADELPHIA, ET AL.** | : | |
| Defendants | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**I.   INTRODUCTION**

Plaintiff, Obina Onyiah, filed a lawsuit under 42 U.S.C. § 1983 alleging that Defendants violated his Fourth and Fourteenth Amendment rights by way of fabricating evidence to falsely convict Plaintiff of homicide; participating in a conspiracy to do the same; failing to intervene in the violations of rights; a *Monell* claim alleging that the above were the result of unconstitutional policy, practice, and/or custom and failure to properly supervise and train; and a supervisory liability claim alleging that supervisory officers directed or were aware of the violations of rights.

Moving Defendants request to be completely dismissed from the case, arguing a violation of the statute of limitations, impermissible "lumping" of claims, and inadequate pleading of supervisory liability. Their motion should be denied because Plaintiff's Second

2

Amended Complaint relates back to the original timely filed complaint, permissibly pleads in the alternative, and pleads ample facts establishing supervisory liability.

## II.   STATEMENT OF THE SECOND AMENDED COMPLAINT

Plaintiff was wrongfully convicted of a homicide committed on October 21, 2010. *Id.* at ¶ 26. Two men attempted to rob a jewelry store, and after an exchange of gunfire, one robber and the owner of the store were dead, and the other attempted robber fled the scene. *Id.* at ¶¶ 26-28. Detective defendants investigated the case, interviewing several witnesses within hours of the crime who all described the robber who fled as significantly shorter than Plaintiff. *Id.* at ¶¶ 29-37. Defendant Lucke compiled surveillance video to extract a still of the suspect, pulling a picture that showed only the suspect's head in profile. *Id.* at ¶¶ 38-39.

Two days after the homicide, Raneisha Carter contacted the police to identify Defendant Lucke's still as the father of her child, Donte Waters. Detective defendants investigated Mr. Waters, during which they recovered clothing consistent with those worn during the attempted robbery, discovered he was not incarcerated at the time, and learned his height matched eyewitness descriptions. Also, two eyewitnesses identified him from a photo array. *Id.* at ¶¶ 41-47. Despite all of the above, detective defendants never questioned Mr. Waters. *Id.* at ¶ 48.

Two days after that, a federal inmate, Donnell Cheek, contacted the police to identify the still image as Plaintiff, Obina Onyiah, after seeing it in the news in prison. *Id.* at ¶¶ 49-51. He obtained preferential sentencing as a result of this identification. *Id.* at ¶ 53. Based on Mr. Cheek's report, detective defendants searched Plaintiff's mother's house, finding no significant evidence. *Id.* at ¶ 54. They also spoke with Plaintiff's sister, but they

failed to document the interview, instead putting only a summary in their file falsely claiming that she had identified Plaintiff as their suspect. *Id.* at ¶¶ 55-57. She did not identify Plaintiff. *Id.* at ¶ 60.

The same day as the search of Plaintiff's mother's house, detective defendants also searched the home of Plaintiff's girlfriend, Katherine Cardona with Ms. Cardona's consent, again finding nothing of evidentiary value. *Id.* at ¶¶ 61-66. After the search, detective defendants brought Ms. Cardona, her friend Mr. Iezzi, and her landlord Mr. Brown to the Homicide Unit but omitted them from the daily log. *Id.* at ¶¶ 63, 67, 69. Approximately twenty (20) minutes later, they also brought Plaintiff to the Homicide Unit and left him handcuffed to a table in an interrogation room for over seven (7) hours before beginning their interrogation. *Id.* at ¶¶ 72-73.

Detective defendants threatened and berated Ms. Cardona when she refused to falsely identify Plaintiff as the man in the surveillance still. *Id.* at ¶¶ 75-78. Defendant Pitts beat Plaintiff for some time until he falsely confessed to the murder, in full view of the other detective defendants, and at the direction or acquiescence of Defendants Clark, Riehl, and Hayes. *Id.* at ¶¶ 79-95, 103-04. This beating and Plaintiff's pleas could be heard from outside the interrogation room, in the hallway and in a neighboring room. *Id.* at ¶¶ 74, 90-95. Detective defendants then delayed Plaintiff's processing to hide his injuries. *Id.* at ¶¶ 100-102.

Thereafter, Defendants Pitts and Jenkins gave false testimony at Plaintiff's motion to suppress his statement as coerced, causing the motion to be denied. *Id.* at ¶¶ 107. Defendant Pitts also gave false testimony at Plaintiff's trial, contributing to his wrongful conviction. *Id.* at ¶ 114. Fortunately, approximately six (6) months after Plaintiff's conviction, the Philadelphia Daily News published an article reporting at least three (3)

4

incidents in which Defendants had coerced false statements, and Plaintiff's counsel found evidence of at least twenty-three (23) other coerced statements. *Id.* at ¶¶ 117-18. Defendant Pitts was also sued at least six (6) times, and at least three (3) statements taken by him were rejected by juries. *Id.* at ¶¶ 119-20.

Plaintiff filed a timely *pro se* petition under the Pennsylvania Post-Conviction Relief Act on May 9, 2016. After investigation, the Philadelphia District Attorney's Office Conviction Integrity Unit filed joint stipulations of fact with Plaintiff, and Plaintiff's convictions were vacated and charges dismissed on May 4, 2021. *Id.* at ¶¶ 121-125.

Moving Defendants Clark, Riehl, and Hayes were, respectively, the captain, a lieutenant, and a sergeant of the Homicide Unit of Defendant City of Philadelphia's police department. *ECF 50* at ¶¶ 20-22. They were responsible for overseeing, supervising, hiring, training, testing, and disciplining employees of the police department, including Movants Glenn, Serrano, McDermott, Pirrone, and Spotwood, as well as the other detective defendants. *Id.* at ¶ 23.

Plaintiff initiated this matter by filing his Complaint on April 21, 2022. *ECF 1*. The Rule 16 conference was held on April 18, 2023, *ECF 34*, and the Court issued its scheduling order on May 4, 2023. *ECF 37*. The initial discovery deadline was May 1, 2024. *Id.* Plaintiff moved to amend his first amended complaint on February 21, 2024, which was granted on March 11, 2024. *ECF 43, 48*. Plaintiff filed his Second Amended Complaint on March 21, 2024, more than a month before the expiration of the original discovery period. *ECF 50*.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) only requires that a plaintiff's complaint set forth "a short and plain statement of the claim". Fed. R. Civ. P. 8(a)(2); *Phillips v. County of*

5

*Allegheny*, 515 F.3d 224, 231 (3rd Cir. 2008) (recognizing in *Twombly* the Supreme Court reaffirmed that Rule 8 only requires a short and plain statement). In elaborating on Rule 8(a), the Supreme Court has held that a complaint is sufficient if it "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests". C*onley v. Gibson*, 335 U.S. 41, 47 (1957); *see also Leatherman v. Tarrant County*, 507 U.S. 163 (1993) (no heightened pleading requirement for § 1983 claims); *Phillips*, 515 F.3d at 231. As the Court made clear, because the Rule only requires "notice pleading", the plaintiff does not have to "set out in detail the facts upon which he bases his claim." *Id*. While Rule 8(a) only requires notice pleading and hence does not require the Plaintiff to set forth every fact that supports the claims, Supreme Court decisions have made clear that a plaintiff must provide sufficient factual allegations to make out a "plausible claim for relief." *Ashcroft v. Iqbal*, 129 Sup. Ct. 1937, 1950 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Summing up the "Supreme Court's formulation of the pleading standard" in *Twombly*, the Third Circuit held, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. (citation omitted). This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'" *Phillips*, 515 F.3d at 234. Accordingly, a complaint is sufficient if it provides fair notice of the Plaintiff's claim and the grounds upon which the claim rests. *Id*. at 233.

Against the liberal pleading requirements of Rule 8(a), Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the defendant bears the burden of showing that no claim has been stated. *Piazza v. Major League Baseball*, 831 F.Supp. 420, 424 (E.D. Pa. 1993). In considering whether a defendant

6

has met his burden, a court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990). As the Third Circuit has acknowledged, "[t]he issue is not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test". *Lake v. Arnold*, 112 F.3d 682, 688 (3d Cir. 1997) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Moreover, the Third Circuit has consistently held that if a claim is vulnerable to dismissal under Rule 12(b)(6), the plaintiff should be given the opportunity to amend the complaint and cure the deficiency, even if the Plaintiff hasn't moved to amend the complaint. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Indeed, as the court has recognized, under these circumstances, the failure of the district court to allow the amendment is an abuse of discretion:

> [T]his court has consistently held that when an individual has filed a complaint under § 1983 which is dismissable [sic] for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint and denial of an application for leave to amend under these circumstances is an abuse of discretion.

*Darr v. Wolf*, 767 F.2d 79, 81 (3d Cir. 1985); s*ee also Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3rd Cir. 2008) ("unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend the complaint."); *Borelli v.City of Reading,* 532 F.2d 950, 951 n.1 (3d Cir. 1976).

IV. **LEGAL ARGUMENT**

Moving Defendants' motion should be denied because they have failed to meet their burden to show a violation of the statute of limitations or insufficiency of Plaintiff's Second Amended Complaint. At the threshold, it is important to note that Plaintiff need only allege

7

"enough facts to raise a reasonable expectation that discovery will reveal evidence of" the elements of Plaintiff's claims. *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Mr. Onyiah has done so, here.

### A. The Statute of Limitations has Not been Violated

The Court should deny Movants' motion on the basis of the statute of limitations because Plaintiff's Second Amended Complaint relates back to the filing of the initial Complaint due to their shared attorney, Danielle Walsh, Esq., and their identity of interest. At the threshold, Plaintiff notes that he agrees with Movants that the relevant statute of limitations is two (2) years, and that said statute ran on May 4, 2023.

The relevant Federal Rule of Civil Procedure is 15(c), which reads:

(c) Relation Back of Amendments.

(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Movants argument relies specifically on the application of Rule 15(c)(1)(C). *ECF 71* at 8-11. Per the Supreme Court, "The question under Rule 15(c)(1)(C)(ii) is not whether [Plaintiff] knew or should have known the identity of [Defendant] as the proper defendant,

8

but whether [Defendant] knew or should have known that it would have been named as a defendant but for an error." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010).

As to whether the newly named defendants "knew or should have known" about Plaintiff's claims, and whether there was sufficient constructive notice to the newly named defendants, "identity of interest" between an original defendant and one added by amendment creates sufficient constructive notice of Plaintiff's Complaint to satisfy the "knew or should have known" element of Rule 15(c)(1)(C)(ii). *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 198 (3d Cir. 2001). Identity of interest can be shown by an original defendant and a newly named Doe defendant (1) being represented by the same attorney, or (2) having a relationship such that notice is reasonably imputed. *Id.* at 198-199 (citing *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8 (1st Cir. 1990), *Jacobsen v. Osbourne*, 133 F.3d 315 (5th Cir. 1998), and *Keitt v. Doe*, 1994 U.S. Dist. LEXIS 10026 (E.D. Pa. July 25, 1994)).

As a general note to the balancing of interests between civil rights Plaintiff and John Doe police defendants, the *Singletary* court also wrote:

> It is certainly not uncommon for victims of civil rights violations (e.g., an assault by police officers or prison guards) to be unaware of the identity of the person or persons who violated those rights. This information is in the possession of the defendants, and many plaintiffs cannot obtain this information until they have had a chance to undergo extensive discovery following institution of a civil action. If such plaintiffs are not allowed to relate back their amended "John Doe" complaints, then the statute of limitations period for these plaintiffs is effectively substantially shorter than it is for other plaintiffs who bring the exact same claim but who know the names of their assailants; the former group of plaintiffs would have to bring their lawsuits well before the end of the limitations period, immediately begin discovery, and hope that they can determine the assailants' names before the statute of limitations expires. **There seems to be no good reason to disadvantage plaintiffs in this way simply because, for example, they were not able to see the name tag of the offending state actor.**

*Id.* at 202 fn. 5 (emphasis added).

9

Ultimately, the *Singletary* court found that there was not sufficient identity of interest in that matter because the newly named defendant was a non-managerial correctional officer who would not necessarily be aware of lawsuits against the prison, did not have the same attorney as the original defendants, and there were no other circumstances that would impute notice. *Id.* at 199.

The instant matter is more analogous to *Jacobsen v. Osbourne*, 133 F.3d 315 (5th Cir. 1998), which was discussed with approval by the *Singletary* court. 266 F.3d at 198-199. In *Jacobsen*, the plaintiff brought a civil rights action against various police officers, sheriff's deputies, and John Does of the same. 133 F.3d at 317. After conducting discovery, the plaintiff sought to amend to name John Doe police officers after the statute of limitations had run. *Id.* at 317-18. This amendment was denied by the trial court, but the Fifth Circuit reversed on appeal because the identity of interest between the newly named John Doe police officers and the originally named defendant meant that the amended complaint related back. *Id.* at 320. The court explained:

> The original complaint was served on the City Attorney, who represented the original City defendants (the City and Officer Osborne) and would necessarily have represented the newly-named officers. The City Attorney answered the complaint on behalf of the City and Officer Osborne and, to do so, presumably investigated the allegations, thus giving the newly-named officers the clause A notice of the action. Consequently, those officers "knew or should have known" that, but for Jacobsen's mistaken belief that Officer Osborne was the arresting officer, the action would have been brought against them, therefore satisfying clause B.
>
> For the officers, the proposed amendment is exactly the situation at which Rule 15(c)(3) is aimed: the misidentification of a defendant, as also discussed infra. Accordingly, the proposed amendment to substitute the officers for Officer Osborne relates back to the original filing, and therefore was not futile. Because the magistrate judge lacked a substantial reason to deny the amendment, the denial constitutes an abuse of discretion.

*Id.*

Here, just as in *Jacobsen*, Deputy City Solicitor and Chief of the Civil Rights Unit, Danielle Walsh, Esq., of the City of Philadelphia Law Department has been representing

10

the defendants in this matter at least since she signed waivers of service for Defendants City of Philadelphia, Charles Ramsey, Ohmarr Jenkins, and Thurston Lucke on May 16, 2022. *ECF 4*. Additionally, she is the direct supervisor[1] of the only other defense attorney entered in the matter, Derek Kane, Esq., also of the City of Philadelphia Law Department.[2] As in *Jacobsen*, Ms. Walsh presumably investigated the allegations in Plaintiff's Complaint, and in doing so gave Movants notice of the claims.

Furthermore, as to the relationships between the defendants, there are ample reasons to impute notice or find constructive notice to Movants such that, at minimum, discovery on the issue is appropriate. Defendants Lt. Riehl, Sergeant Hayes, and Captain Clark were all high-ranking officers in the Philadelphia Police Department Homicide Unit who, at all relevant times, were responsible for overseeing the other named defendants and had the authority to direct the conduct of and discipline them. *ECF 50* at ¶¶ 20-22. They hired, tested, trained, and supervised them. *ECF 50* at ¶ 23. As managerial employees of Original Defendant City of Philadelphia specifically tasked with overseeing Original Defendants Pitts, Jenkins, and Thurston, notice is imputed. *Compare Garvin v. City of Philadelphia*, 354 F.3d 215, 227 (3d Cir. 2003) (holding that non-managerial police officers do not share a nexus of interest with their employer) (quoting *Singletary*, 266 F.3d at 199).

As to Defendants Glenn, Serrano, McDermott, Pirrone, and Spotwood, they were present for the violations of Plaintiff's rights, a significant factor in *Ayala Serrano*, 909 F.2d at 13, and their fellow homicide detectives Defendants Pitts, Jenkins, and Lucke were named in the original complaint, at least creating an issue that requires discovery. *Miller v. Hassinger*, 173 Fed. Appx. 948, 956 fn.4 (3d Cir. 2006) (holding that where the relationship

---

[1] City of Philadelphia Law Department, Litigation Group, Civil Rights Unit *available at* https://www.phila.gov/departments/law-department/practice-groups/litigation-group/#
[2] *ECF 32*.

11

between original defendants and newly named non-managerial defendants of the same unit in a police department is unclear, further proceedings in the District Court are appropriate).

Lastly, this matter is distinguishable from *Garvin*, which is relied upon heavily by Movants. *See ECF 71* at 8-10. In that matter, the plaintiff brought suit against the City of Philadelphia and Doe police officers related to her arrest on April 24, 2000. 354 F.3d 215, 217 (3d Cir. 2003). She filed suit six (6) days prior to the expiration of the statute of limitations, on April 18, 2002. *Id.* The trial court set October 31, 2002, as the discovery deadline, and the defense provided initial disclosures on July 24, 2002. *Id.* at 218. Then, on October 29, 2002, the plaintiff moved to amend the complaint to name the officers identified in initial disclosures as the Doe defendants and request additional time for discovery. The trial court denied the motions, denied reconsideration, and granted summary judgment. *Id.* at 218-219. The City was represented through the litigation by the same City Solicitor, but that solicitor did not represent any individual police officers. *Id.* at 223-24.

The Third Circuit affirmed the trial court because the parties did not share an attorney, the newly named defendants were non-managerial and therefore did not have identity of interest with the City, and the plaintiff failed to exercise diligence in identifying the Doe defendants. *Id.* at 223-28. Here, as discussed above, all parties are represented by Attorney Walsh and her subordinate Attorney Kane, three (3) of the newly named defendants hold managerial roles, and the relationships between all individual defendants at least necessitates discovery. Additionally, Plaintiff sought amendment within the time period set by the Court and well before the expiration of discovery. As such, Movants' relation back argument should be rejected by the Court.

### B. Plaintiff's Second Amended Complaint Permissibly Pleads in the Alternative

Defendants' motion should be denied as to "lumping" because there is no heightened pleading standard for civil rights cases; Plaintiff clearly identifies locations, dates, times, and specific conduct; and alternative pleading is permitted.

At the threshold, Defendants are incorrect that there is a "higher degree" required of civil rights complaints. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993) ("We granted certiorari to decide whether a federal court may apply a 'heightened pleading standard' . . . in civil rights cases . . . . We hold it may not."), *see also Zlomsowitch v. East Penn Township*, 2012 U.S. Dist. LEXIS 62022 at *10-*12 (M.D. Pa. May 3, 2012) (analyzing *Leatherman*'s application to claims of malicious prosecution and municipal liability in light of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). All of the cases cited by Defendants pre-date *Leatherman* and are therefore inapposite. *ECF 71* at 11.

The Second Amended Complaint clearly identifies the involved individuals, which of Plaintiff's rights were violated, on what dates they were violated, and the specific actions that violated those rights. Most significantly, that Plaintiff was beaten by Defendant Pitts for an extended time on the night of November 8, 2010, into the early morning of November 9, 2010, until he falsely confessed to a murder, and Movants Glenn, Serrano, McDermott, Pirrone, Spotwood, and others were present for, aware of, and failed to intervene. *ECF 50* at ¶¶ 79-97. This is plainly sufficient at this stage. *Zlomsowitch*, 2012 U.S. Dist. LEXIS 62022 at *11.

Defendants also take issue with Plaintiff's use of alternative pleading, labeling it "lumping". *ECF 71* at 11-12. This method of pleading is specifically authorized by the Rules of Civil Procedure. "A party may set out two or more statements of a claim or defense

13

alternatively or hypothetically, either in a single count . . . or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2).

Here, any one of Plaintiff's alternative pleadings is sufficient, therefore they are sufficient in toto. If the Second Amended Complaint sufficiently pleads that any one Movant watched Defendant Pitts physically assault Plaintiff and did nothing to intervene, participated in the conspiracy to falsely convict Plaintiff, and participated in withholding exculpatory evidence, it sufficiently pleads in the alternative. That is the case, here. *See Zlomsowitch*, 2012 U.S. Dist. LEXIS 62022 at *11.

### C. Plaintiff Adequately Pleads Supervisory Liability against Defendants Clark, Riehl, and Hayes

Plaintiff's Second Amended Complaint adequately pleads a claim of supervisory liability against Moving Defendants Clark, Riehl, and Hayes. The Second Amended Complaint provides factual allegations and reasonable inferences therefrom that sufficiently allege that they directed unconstitutional acts, participated in unconstitutional acts, or were aware of and acquiesced to unconstitutional acts.

First, Movants cite an incomplete standard for supervisory liability. *ECF 71* at 12. While supervisory liability can be had in a *Monell*-like situation of promulgating unconstitutional policies, it can also be established by personal involvement, personally directing the unconstitutional actions, or knowledge and acquiescence thereof. *Ogrod v. City of Philadelphia*, 598 F.Supp.3d 253, 265 (E.D. Pa. 2022) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

At minimum, Defendants' motion must be denied because Plaintiff adequately pleads at least direction and knowledge and acquiescence, and if one alternative pleading is sufficient (or two), all are. Fed. R. Civ. P. 8(d)(2).

> Upon information and belief, Defendants, Lieutenant Phillip Riehl Badge Number 443, Sergeant Hayes Badge Number 8595, and Captain James Clark, **had knowledge of the conduct** of Defendants, Former Detective James Pitts, Detective Ohmarr Jenkins, Detective Thorston Lucke, Detective Cummings, Detective Glenn, Detective Serrano, Detective McDermott, Detective Pirrone, and/or Detective Spotwood, **and condoned, acquiesced, or directed** the aforementioned Defendants to continue with the unlawful and unconstitutional conduct."

*ECF 50* at ¶ 103 (emphasis added).

Knowledge and acquiescence are, in and of themselves, passive things. Knowledge is "the fact or condition of being aware of something."[3] Acquiescence is "passive acceptance or submission."[4] So, as to acquiescence, there is not more that a plaintiff could allege than that they acquiesced—that they did nothing despite their knowledge.

While it is true that Plaintiff's Second Amended Complaint does not identify the exact time and circumstance of Movants Clark, Riehl, and Hayes gaining knowledge of the violations of Plaintiff's rights, it does identify the dates that Plaintiff's rights were violated, the actions taken against him that violated his rights, the persons who violated his rights, that these defendants were the supervisors of those persons, and that these defendants knew about the violations. This provides Defendants Clark, Riehl, and Hayes sufficient notice to mount a defense.

It also alleges that the beating went on "throughout the night" and was audible in the hallway outside the interrogation room and inside an adjacent room. *ECF 50* at ¶¶ 74, 90-95. The Second Amended Complaint then describes how Plaintiff was kept in the

---

[3] *Merriam-Webster*, "Knowledge", *available at https://www.merriam-webster.com/dictionary/knowledge.*
[4] *Merriam-Webster*, "Acquiescence", *available at https://www.merriam-webster.com/dictionary/acquiescence.*

15

Homicide Unit for two (2) days before he was processed and charged. *Id.* at ¶¶ 100-01. It is certainly plausible that the captain, a lieutenant, and a sergeant of the Homicide Unit would know about a beating that was ringing through the halls all night, and that they would know about a suspect being held without charges for forty-eight (48) continuous hours. It is similarly plausible that, aware of the above, they directed their detectives to bring charges based on the coerced confession or, in the alternative, did nothing (acquiesced). *See, e.g., Santiago v. Warminster Township*, 629 F.3d 121, 129-34 (3d Cir. 2010) (analyzing the sufficiency of a supervisory liability claim from the complaint's factual allegations and reasonable inferences therefrom), *see also Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995) (holding that, regarding a supervisory liability claim, "We believe that actual knowledge can be inferred from circumstances other than actual sight.").

Furthermore, "It is also possible to establish section 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior . . . ." *Baker*, 50 F.30 at 1191 fn.3 (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 724-25 (3d Cir. 1989) *cert. denied*, 493 U.S. 1044 (1990)). Plaintiff pleads that, after his wrongful conviction, his counsel discovered at least twenty-three (23) different witnesses had been coerced by Defendant Pitts. *ECF 50* at ¶ 118. This includes at least fifteen (15) incidents that pre-date the homicide Plaintiff was wrongfully convicted of. *ECF 50* at ¶ 179. Defendant Jenkins, similarly, with Defendant Pitts or by himself was involved in eight (8) similar incidents. *ECF 50* at ¶¶ 180-81. This further shows the plausibility of Plaintiff's supervisory liability claim.

V.   **CONCLUSION**

For the above-stated reasons, Defendants' Partial Motion to Dismiss should be denied.

Respectfully submitted,

BY:   */s/ Alan E. Denenberg*
      ALAN E. DENENBERG, ESQ.
      ATTORNEY FOR PLAINTIFF